IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

FILED
AUG 11 2016
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No.: 3:13CR136–HEH |
| ) | Civil Action No.: 3:16CV16–HEH |
| RAMOTH JEAN, ) | |
| ) | |
| Petitioner. ) | |

## MEMORANDUM OPINION
(Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate,
Set Aside, or Correct Sentence)

Petitioner, Ramoth Jean ("Jean"), a federal inmate proceeding *pro se*, entered a plea of guilty in this Court on October 8, 2013 to Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. § 1349 and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1), pursuant to a plea agreement. In paragraph 5 of the Plea Agreement, Jean waived his right of appeal with respect to any sentence within the statutory maximum. (Plea Agreement ¶ 5, ECF No. 25.)

On January 9, 2014, Jean was sentenced to a total of 114 months of confinement, coupled with three years of supervised release.[1] Jean subsequently filed a Notice of Appeal in the United States Court of Appeals for the Fourth Circuit, which was dismissed by unpublished Order entered October 9, 2014 (ECF No. 68). Jean is currently serving his sentence at the Federal Correctional Institution in Jessup, Georgia.

---

[1] Unrelated to the immediate action, Jean also pled guilty on March 12, 2015 to Contempt of Court, in violation of 18 U.S.C. § 401(3). This conviction resulted from his refusal to comply with the Court's January 27, 2014 Immunity and Compulsion Order requiring him to testify truthfully before a grand jury. Jean was sentenced to an additional eight months of consecutive confinement.

The case is presently before the Court on Jean's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("§ 2255 Motion," ECF No. 74), which was timely filed. The United States has filed a memorandum supporting its position opposing the relief sought by Jean (ECF No. 76), to which Jean has filed a reply (ECF No. 77). Although Jean styles his claims as ineffective assistance of counsel, they are, in essence, a thinly veiled vehicle for challenging the application of certain sentencing guidelines and loss calculations in his case. The record at hand conclusively fails to support any of Jean's contentions and no hearing is necessary. His perception of ineffectiveness flows from his misunderstanding of the law and misconstruction of the evidence.

This Court's analysis begins with recognition of the well-settled principle that unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral review is limited. *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). As Chief Justice Rehnquist noted in *Brecht v. Abrahamson*, "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness. . . . Accordingly, it hardly bears repeating that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." 507 U.S. 619, 633–34 (1993) (internal quotation marks and citations omitted). Accordingly, errors of law do not typically provide a basis for habeas relief under 28 U.S.C. § 2255 unless it constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Timmreck*, 441 U.S. 780, 783 (1979). In a seamless series of cases, the Fourth Circuit has continually held that "misapplication of the sentencing guidelines does not amount to a miscarriage of justice."

*United States v. Mikalajunas*, 186 F.3d 490, 495–96 (4th Cir. 1999); *see United States v. Foote*, 784 F.3d 931, 939 (4th Cir. 2015); *United States v. Pregent*, 190 F.3d 279, 283–84 (4th Cir. 1999).

Historically, the United States Supreme Court has adopted a narrow construction of the miscarriage of justice exception and limited its application to viable claims of actual innocence. *Foote*, 784 F.3d at 940 (citing *Schlup v. Delo*, 513 U.S. 298, 315, 321 (1995)). The Supreme Court in *Schlup* characterized the class of eligible cases as narrow and the concept applicable only to the extraordinary case. 513 U.S. at 319.

The overarching claim in Jean's § 2255 Motion is that he received ineffective assistance from his trial counsel during the sentencing proceedings. He contends that his counsel (1) failed to challenge the loss calculation amount; (2) failed to review changes to "SECOND PSR"; (3) was ineffective in not arguing against the "sophisticated means" enhancement; and (4) failed to challenge losses occurring after Jean's incarceration. The Court's analysis is hindered somewhat by the lean factual basis supporting Jean's claims and his misapplication of legal principles.

As freestanding challenges to the trial court's calculation of the sentencing guidelines, Jean's claims founder on the shoals of firm circuit precedent. In an attempt to provide legal sustenance to his guideline challenges, Jean recasts them as ineffective assistance of counsel claims.

To prevail on a claim of ineffective assistance of counsel, a defendant must show first that counsel's representation was deficient, and second, that the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To

3

satisfy the deficient performance prong of *Strickland*, a defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).

The prejudice component requires a defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697. To support his claim, Jean must demonstrate a "reasonable probability of a different outcome." *Lenz v. Washington*, 444 F.3d 295, 303 (4th Cir. 2006) (internal quotation marks and citations omitted). Jean fails to surmount this high hurdle.

Even if trial counsel had raised an objection to the Court's calculation of the loss amount in this case, it would have been unavailing. In his § 2255 Motion, Jean hinges this claim on the simple comment, "[p]lease see sentence imposed, and 'actual' loss." (§ 2255 Motion ¶ 12.) In calculating the loss in this case, the Court drew upon the record evidence and relied upon an intended loss methodology. Under the U.S. Sentencing Guidelines, losses attributable to a defendant are the "greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A). The sentencing guidelines further define "intended loss" as pecuniary harm envisioned by the charged scheme or plan irrespective of whether the actual losses were likely to occur. U.S.S.G. § 2B1.1. cmt. n.3(A)(ii). Central

4

to the analysis is what was ultimately intended by the scheme. The Fourth Circuit has consistently approved of the intended loss methodology. *United States v. Miller*, 316 F.3d 495, 499 (4th Cir. 2003). Jean's challenge to the loss calculation is further foreclosed by the Statement of Facts, which he acknowledged in open court as correct. In paragraph 23, Jean represented that "the parties agree that the reasonably foreseeable intended loss attributable to the defendant is $2,241,000 (747 names X $3,000.00 per return)." (Statement of Facts ¶ 23, ECF No. 26.)

The object of the conspiracy in this case was the use of stolen personal identifying information to file false tax returns that generated fraudulent refunds shared by members of the conspiracy. During the course of the investigation, law enforcement recovered 747 index cards containing personal identifying information, some accompanied by prepaid debit cards in the same name. The debit cards were used in connection with tax refunds. In the agreed upon Statement of Facts, Jean admitted

> that losses or intended losses associated with the 747 names were reasonably foreseeable to JEAN, as it was reasonably foreseeable that each of the names would be used to file a fraudulent tax return if the scheme proceeded according to plan. Although the amounts sought in the fraudulently filed returns varied, the parties agree that an average sought refund amount reasonably foreseeable to JEAN was $3,000.00 per return.

(*Id.* at ¶ 22.)

Given Jean's stipulation to the intended loss amount, his trial counsel's decision to honor the plea agreement demonstrated sound judgment and was not prejudicial. Jean's first claim is without factual support.

Jean contends in his second claim that "[c]ounsel failed to review with Petitioner the changes made to the PSR, specifically the addition of the 'sophisticated means' enhancement which increased Petitioner's sentencing range . . . ." (Jean's Reply at 4, ECF No. 77.)[2] As the government points out in its response, Jean fails to offer any explanation of how his review of the Addendum to the Presentence Report adjusting the U.S. Sentencing Guidelines by the addition of two levels under U.S.S.G. § 2B1.1(b)(10)(c) for employing sophisticated means and carrying out the mail and wire fraud scheme was prejudicial. Jean was fully aware of the intended enhancement.

The Statement of Facts revealed that Jean was an integral part of the web of deception that veiled this tax fraud scheme. Jean and the other co-conspirators misappropriated the personal identifiers of hundreds of individuals. They used hotel computers in various locations to file false tax returns online. To camouflage their trail, they used stolen identities and fraudulent identification documents to rent the motel rooms. As part of the scheme, they directed TurboTax to mail debit card refunds to Richmond addresses from which they would intercept the cards. The fraudulent proceeds were rapidly transferred from the debit card issued by TurboTax to other cards before the fraud could be detected. (Statement of Facts ¶¶ 6–22.)

As the commentary to U.S.S.G. §2B1.1(b)(10) explains, the term "sophisticated means" contemplates an

---

[2] This contention contradicts the representations of his trial counsel at the sentencing hearing. Counsel indicated to the Court that he had received a copy of the Presentence Report, as well as the probation officer's calculation of the guidelines, and had ample opportunity to go over both documents with his client. (Hr'g Tr. 3, Jan. 9, 2014, ECF No. 55.) Jean's trial counsel is deceased.

6

especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

U.S.S.G. §2B1.1(b)(10)(c) cmt. appl. n.9(B).

Based on the Statement of Facts alone, the evidence supporting application of a two level enhancement for sophisticated means was compelling. To insulate themselves from detection, Jean and his co-conspirators employed elaborate means to shield their identities and location. Assuming, arguendo, that Jean's counsel neglected to show him the Addendum to the Presentence Report reflecting the sophisticated means enhancement, there was no prejudice to Jean. Its application was predicated on facts conceded in the signed Statement of Facts.

The same analysis applies with respect to Jean's third claim—that counsel failed to object to application of the sophisticated means enhancement. Given the weight of the government's evidence, much of which had been admitted by Jean in the Statement of Facts, any objection raised by counsel would have been futile. As an alternative ground supporting this claim, Jean directs the Court's attention to an Amendment to U.S.S.G. § 2B1.1(b)(10)(c), effective November 1, 2015, which tightens the application of the sophisticated means enhancement. Under the Amendment, in addition to demonstrating the employment of sophisticated means, the United States must also prove that "the defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S.S.G. § 2B1.1(b)(10)(c). Since this Amendment was adopted,

7

approximately two years after the sentencing hearing at issue, it is inconceivable that counsel could have forecast its enactment. Even if this Amendment was effective at the time of Jean's sentencing, it would not have afforded him a safe sanctuary. Jean clearly played an integral role in this conspiracy, which took elaborate precautions to conceal the identity of its participants.

Jean's third claim fairs no better than the preceding two. Even if challenges to sentencing guidelines' decisions were cognizable under § 2255, Jean fails to demonstrate a miscarriage of justice. In the final analysis, he received exactly what he bargained for.

Finally, Jean maintains that his trial counsel failed to object to the accrual of losses caused by the continuing operation of the conspiracy during the course of Jean's post-arrest confinement. He maintains that his incarceration effectuated his withdrawal from the conspiracy and absolved him from any further responsibility for his co-conspirators' actions. Although he again veils his claim as one of ineffective assistance of counsel, at its core it turns on the Court's calculation of losses during the sentencing hearing. As discussed *infra*, these types of guideline issues are beyond the reach of § 2255. Even if the claim fell within the perimeters of § 2255, the record evidence fails to support Jean's conclusion that he withdrew from the conspiracy. "Since conspiracy is a continuing offense, *United States v. Kissel*, 218 U.S. 601, 610 (1910), a defendant who has joined a conspiracy continues to violate the law 'through every moment of [the conspiracy's] existence.'" *Smith v. United States*, 133 S. Ct. 714, 719 (2013) (citing *Hyde v. United States*, 225 U.S. 347, 369 (1912)).

As discussed in more detail above, the loss calculations employed by the Court were derived from the agreed upon Statement of Facts which specified that "the reasonably foreseeable intended loss attributable to the defendant is $2,241,000.00." (Statement of Facts ¶ 23.) Jean acknowledged during his Rule 11 plea hearing that the Statement of Facts was correct and that he wished to make no additions or modifications. (Hr'g Tr. 18, Oct. 8, 2013, ECF No. 54.) Neither the record nor the law supports any relief on Jean's fourth claim.

Viewing the record as a whole, Jean fails to demonstrate that his trial counsel's representation fell below an objective standard of reasonableness. Counsel's tactical decisions appeared well-calculated and based on sound judgment. Decisions pertaining to "trial strategy and tactics such as what evidence should be introduced, what stipulations should be made, what objection should be raised," resided with trial counsel. *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (internal quotation marks and citation omitted).

To prevail under 28 U.S.C. § 2255, Jean must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Not only has Jean failed to show deficient representation by his counsel, but he also failed to demonstrate the probability of a different outcome had counsel misguidedly pursued the suggestions belatedly offered by Jean. In fact, a different outcome would have literally been a legal impossibility.

9

Despite Jean's challenges to the wisdom and judgment of his counsel, he has not demonstrated that his performance was inadequate, ineffective, or prejudicial. Jean's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 will therefore be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: August 10, 2016
Richmond, VA

10